UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CRYSTAL KRUEGER, an individual on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALASKA AIRLINES, INC.,<br><br>Defendant. | CASE NO. C22-1777-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff's motion to remand (Dkt. No. 10). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby DENIES the motion for the reasons explained herein.

I. **BACKGROUND**

Plaintiff Crystal Krueger filed a class action in King County Superior Court against Defendant Alaska Airlines, Inc., alleging that Defendant's "practices and policies" deny flight attendants statutorily required meal periods, rest breaks, minimum wage, and overtime wage pay. (Dkt. No. 1-2 at 10–11.) Plaintiff seeks compensatory damages, double damages, prejudgment interest, costs, and attorney's fees. (*Id.* at 11.) Defendant removed to federal court, citing the Class Action Fairness Act ("CAFA"). (Dkt. No. 1 at 3.) Plaintiff moves to remand, arguing that Defendant did not establish the requisite jurisdictional amount in controversy and, in the alternative, that the action falls within a CAFA jurisdiction exception. (*See* Dkt. No. 10 at 1–2.)

## II. DISCUSSION

### A. Legal Standard

"CAFA significantly expanded federal jurisdiction in diversity class actions." *Jauregui v. Roadrunner Transp. Servs., Inc.,* 28 F.4th 989, 992 (9th Cir. 2022). CAFA provides federal district courts with original jurisdiction over class actions when there is minimal diversity, a proposed class of at least 100 members, and an amount in controversy exceeding $5 million. 28 U.S.C. § 1332(d)(2). Even when these requirements are met, district courts must decline jurisdiction when a statutory exception applies. *See id.* § 1332(d)(4). District courts evaluate the amount in controversy in a class action by aggregating individual class members' claims. *See Standard Fire Ins. Co. v. Knowles,* 568 U.S. 588, 592 (2013). The class members include named or unnamed persons who "fall within the definition of the *proposed* or certified class." *Id.*

The amount in controversy is the "amount at stake in the underlying litigation . . . [it] does not mean likely or probable liability; rather, it refers to possible liability." *Jauregui*, 28 F.4th at 994. A defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 89 (2014). The amount in controversy is generally accepted absent objection from the plaintiff or questioning from the court. *See Jauregui,* 28 F.4th at 992. Once the valuation is questioned, both parties must submit amount-in-controversy assessments supported by proof, which the court analyzes to determine whether, by a preponderance of the evidence, the amount-in-controversy requirement has been satisfied. *See Dart Cherokee Basin*, 574 U.S. at 88. The defendant bears the burden of proof and may support its valuation by relying on "a chain of reasoning that includes assumptions." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015).

### B. Amount in Controversy

The parties dispute the amount-in-controversy. (*See* Dkt. Nos. 10 at 1; 15 at 12.) Defendant estimates the proposed class consists of roughly 2,700 Alaska Airlines "flight attendants who, over the period from November 9, 2019, to the present, were simultaneously based at [SeaTac] and [are] Washington residents." (Dkt. Nos. 15 at 11; 17 at 3.) Defendant assumes a violation rate of 100% and estimates that the class members made $36.18 per hour. (Dkt. No. 17 at 1, 4–5.)

Plaintiff argues that Defendant's violation and hourly wage assumptions are unreasonable.[1] (*See* Dkt. No. 18 at 2.) Defendant did not provide exact equations as support for its estimation, but to require Defendant to do so would impose "a heavy burden" and contravene "the text and understanding of CAFA." *Jauregui*, 28 F.4th at 992. Instead, Defendant relied on the Labor Relations Managing Director's calculation of an hourly wage based on the "total pay" and "trip for pay" system Defendant uses. (Dkt. No. 17 at 1, 4–5.) Therefore, Defendant's assumption of hourly wages is both reasonable and plausible.

Regarding the violation rate, Defendant's estimate relies on the assumption that the class members suffer at least one of each type of violation per week, which in turn relies on an assumption that class members work at least one qualifying shift per week. (Dkt. No. 17 at 4.) Defendant provides evidence that the class members work, on average, 11 days each month. (*Id.*) Therefore, the conclusion is consistent with both Defendant's policies and facts alleged in Plaintiff's complaint, which state that a flight attendant must take 48 hours off duty within every 7–day period, which means the 11 days must be spread out over the course of at least three

---

[1] Defendant's notice of removal estimated that the total amount in controversy was $14,976,000. This amount only included calculations for the meal period, rest period, and minimum wage claims.

1    weeks. (*See* Dkt. No. 17 at 23.) Accordingly, Defendant's assumed violation rate is both

2    reasonable and plausible.

3                    **C.  Jurisdictional Exceptions**

4         Even if an action satisfies CAFA's initial jurisdictional requirements, district courts must

5    still decline jurisdiction if one of two statutory exceptions apply. *See* 28 U.S.C. § 1332(d)(4).

6    The first exception (the so-called "home state" exception) applies when "greater than two-thirds

7    of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which

8    the action was originally filed." *Id.* at (d)(4)(A)(i)(1). The second, "local controversy" exception,

9    applies when at least two-thirds of the proposed plaintiff class members in the aggregate, and the

10   primary defendants, are citizens of the State in which the action was originally filed. *Id.* at

11   (d)(4)(B). When considering CAFA jurisdiction, the Court is "limited to examining the case as of

12   the time it was filed in state court." *Standard Fire* at 1349 (internal quotations omitted).

13        The parties disagree as to whether Plaintiff's proposed class includes enough Washington

14   citizens to meet either exception. Plaintiff's complaint defines class membership as contingent

15   upon Washington residency.[2] (Dkt. No. 1-2 at 5–6.) Plaintiff states that the "overwhelming

16   majority of SeaTac[–]based flight attendants reside and make their homes in Washington, like

17   [she] do[es]." (Dkt. No. 12 at 1–2.) However, Plaintiff's own declaration describes how easy it is

18   for commuters to "make their homes wherever they are commuting from" as opposed to

19   Washington. (Dkt. No. 12 at 4.) Meanwhile, Defendant identified "more than 500" class

---

[2] While residency does not necessarily equate to citizenship, a court should consider the entire record "to determine whether evidence of residency can properly establish citizenship." *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 886 (9th Cir. 2013). While "pure inference regarding the citizenship of prospective class members may be sufficient if the class is defined as limited to citizens of the state in question," such a finding should otherwise not be "based on guesswork." *Id.* at 881–82. Evidence must support a finding that the citizens outnumber the non–citizens either by two–to–one or more than two–to–one. *See id.* at 884.

members who use "non–revenue commuter flight transportation" and of those 500 "a sampling" provided evidence that they were not Washington citizens at the time of removal. (Dkt. No. 16 at 6.) Washington addresses and personal relationships with other flight attendants alone do not show that, by a preponderance of the evidence, at least or more than two–thirds of the flight attendants in her proposed class are Washington citizens. Therefore, neither of the CAFA jurisdictional exceptions apply.[3]

### III.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion to remand (Dkt. No. 10) is DENIED.

DATED this 6th day of March 2023.

*[signature]*

JOHN C. COUGHENOUR
United States District Judge

---

[3] For the same reasons the court finds Plaintiff's assertions regarding citizenship insufficient, the court declines to exercise discretionary jurisdiction under 28 U.S.C. § 1332(d)(3). (*See* Dkt. No. 10 at 15.)