1

2

3

4

5

6

7

8

The Honorable John C. Coughenour

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| CRYSTAL KRUEGER, an individual on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALASKA AIRLINES, INC.,<br><br>Defendant. | **CLASS ACTION**<br><br>Case No. 2:22-CV-01777-JCC<br><br>**DEFENDANT ALASKA AIRLINES, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>NOTED: JANUARY 19, 2024<br><br>ORAL ARGUMENT REQUESTED |

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S MOTION TO DISMISS
[No. 2:22-CV-01777-JCC]

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

PROCEDURAL BACKGROUND ........................................................................................ 3

FACTUAL BACKGROUND ................................................................................................ 3

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ........................................................................................................................ 6

I.    *HAWAIIAN AIRLINES* PREEMPTION ..................................................................... 6

II.    PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE RLA. ...................................... 9

       A.    Plaintiff's minimum wage, overtime, and rest-period claims are preempted because determining whether Alaska's pay system is a "piece rate" requires interpretation of the CBA. .................................................................. 9

       B.    Plaintiff's minimum wage and overtime claims require interpretation of the CBA to determine how long Flight Attendants worked. ........................................... 10

       C.    Plaintiff's meal- and rest-period claims require interpretation of the CBA to determine whether and when breaks are required. ...................................... 13

       D.    Plaintiff's overtime, meal-period, and rest-period claims require interpretation of the CBA to determine the "regular rate" of pay. ............................................... 15

       E.    Plaintiff's meal- and rest-period claims require interpretation of express terms and implied terms that have developed through past practice. ........................................... 20

CONCLUSION .................................................................................................................... 24

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

CASES

4

*Adames v. Executive Airlines, Inc.*,
   258 F.3d 7 (1st Cir. 2001)...........................................................................passim

*Air Transp. Ass'n of Am. v. San Francisco*,
   266 F.3d 1064 (9th Cir. 2001) .............................................................................. 1

*Alaska Airlines, Inc. v. Schurke*,
   898 F.3d 904 (9th Cir. 2018) (en banc) ........................................................passim

*Allis-Chalmers Corp. v. Lueck*,
   471 U.S. 202 (1985)........................................................................................6, 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 5

*Balcorta v. Twentieth Century-Fox Film Corp.*,
   208 F.3d 1102 (9th Cir. 2000) ............................................................................. 7

*Beckington v. American Airlines, Inc.*,
   926 F.3d 595 (9th Cir. 2019) ............................................................................... 5

*Bhd. of Locomotive Engineers & Trainmen (Gen. Comm. of Adjustment, Cent.
   Region) v. Union Pac. R.R. Co.*,
   879 F.3d 754 (7th Cir. 2017) ............................................................................. 20

*Blackwell v. SkyWest Airlines, Inc.*,
   No. 06-cv-0307, 2008 WL 5103195 (S.D. Cal. Dec. 3, 2008) .............................2, 15, 19, 22

*Bowcock v. Cont'l Airlines, Inc.*,
   No. CIV.A. H-10-02372, 2010 WL 4812969 (S.D. Tex. Nov. 19, 2010),
   *aff'd*, 432 F. App'x 343 (5th Cir. 2011).............................................................. 21

*Burgos v. Executive Air, Inc.*,
   914 F. Supp. 792 (D.P.R. 1996).................................................................... 12, 20

DEFENDANT'S MOTION TO DISMISS
[No. 2:22-CV-01777-JCC] – Page ii

JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 489-3939

*Camarena-Regalado v. S. Cal. Permanente Med. Grp.*,
    No. LACV22206010JAKJPRX, 2023 WL 6216708 (C.D. Cal. Sept. 25,
    2023) ................................................................................................................................. 23

*Caterpillar Inc. v. Williams*,
    482 U.S. 386 (1987) ............................................................................................................. 6

*Chavez v. United States*,
    683 F.3d 1102 (9th Cir. 2012) ............................................................................................ 5

*Chelan Cnty. Deputy Sheriffs' Ass'n v. Chelan Cnty.*,
    109 Wash. 2d 282 (1987) .................................................................................................. 11

*Columbia Exp. Terminal, LLC v. ILWU-PMA Pension Fund*,
    No. 20-CV-08202-JSW, 2023 WL 3510377 (N.D. Cal. May 16, 2023) ............................. 11

*Columbia Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union*,
    23 F.4th 836 (9th Cir. 2022), *cert. dismissed*, 142 S. Ct. 2094 (2022) .................................. 8

*Consol. Rail Corp. v. Ry. Labor Execs. Ass'n*,
    491 U.S. 299 (1989) ............................................................................................................. 6

*Cramer v. Consol. Freightways Inc.*,
    255 F.3d 683 (9th Cir. 2001) ............................................................................................... 7

*Dworkin v. Hustler Mag. Inc.*,
    867 F.2d 1188 (9th Cir. 1989) ............................................................................................ 5

*Firestone v. S. Cal. Gas Co.*,
    219 F.3d 1063 (9th Cir. 2000) ........................................................................................ 1, 6

*Fitz-Gerald v. SkyWest Airlines, Inc.*,
    155 Cal. App. 4th 411 (2007) ...................................................................................... 15, 20

*Gallerson v. BNSF Ry. Co.*,
    No. C15-5821 BHS, 2016 WL 772926 (W.D. Wash. Feb. 29, 2016) .................................. 5

*Hawaiian Airlines, Inc. v. Norris*,
    512 U.S. 246 (1994) ................................................................................................ 1, 6, 9, 14

*Int'l Bhd. of Elec. Workers v. Hechler*,
    481 U.S. 851 (1987) ............................................................................................................. 7

JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 489-3939

*Johnson v. Sky Chefs, Inc.,*
   No. 11-CV-05619-LHK, 2012 WL 4483225 (N.D. Cal. Sept. 27, 2012)...............................5

*Kane v. Matson Navigation Co., Inc.,*
   645 F. Supp. 3d 942 (N.D. Cal. 2022) .............................................................................20

*Kobold v. Good Samaritan Reg'l Med. Ctr.,*
   832 F.3d 1024 (9th Cir. 2015) ...............................................................................18, 23

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
   511 U.S. 375 (1994).................................................................................................5

*Marquez v. Toll Glob. Forwarding (USA) Inc.,*
   No. 18-cv-03054-ODW, 2018 WL 3218102 (C.D. Cal. June 28, 2018) ..............................23

*Marquez v. Toll Global Forwarding,*
   804 F. App'x 679 (9th Cir. 2020) (unpublished)....................................8, 18, 22, 23

*McKinley v. Southwest Airlines Co.,*
   680 F. App'x 522 (9th Cir. 2017) (unpublished)..........................................2, 15, 19

*McKinley v. Southwest Airlines Co.,*
   No. CV 15-02939-AB, 2015 WL 2431644 (C.D. Cal. May 19, 2015), *aff'd,*
   680 F. App'x 522 (9th Cir. 2017) ...............................................................................7

*Pellino v. Brink's Inc.,*
   164 Wash. App. 668 (2011).........................................................................................15

*Penn. Fed'n of Bhd. of Maint. of Way Emps. v. Nat'l R.R. Passenger Corp.
   (Amtrak),*
   989 F.2d 112 (3d Cir. 1993).......................................................................................12

*Rorebeck v. Franciscan Health,*
   No. 3:18-CV-05423, 2019 WL 1436661 (W.D. Wash. Apr. 1, 2019) ...............................5, 8

*Safe Air for Everyone v. Meyer,*
   373 F.3d 1035 (9th Cir. 2004) ....................................................................................5

*Wash. State Nurses Ass'n v. Sacred Heart Med. Ctr.,*
   175 Wash. 2d 822 (2012)...........................................................................................15

*West v. Alaska Airlines, Inc.,*
   No. 3:18-CV-00102-SLG, 2018 WL 6424705 (D. Alaska Dec. 6, 2018) .............................7

JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 489-3939

*Wisc. Cent. Ltd. v. Shannon,*
    516 F. Supp. 2d 917 (N.D. Ill. 2007), *aff'd*, 539 F.3d 751 (7th Cir. 2008) ...................passim

**STATUTES**

45 U.S.C.
    § 151................................................................................................................................ 1
    § 151a............................................................................................................................... 6
    § 153................................................................................................................................ 6

RCW
    § 49.46.130(1)................................................................................................................ 15

**OTHER AUTHORITIES**

14 C.F.R. § 121.467 ............................................................................................................... 14

Fed. R. Civ. P. 12(b)(1)................................................................................................. 1, 5, 24

Fed. R. Civ. P. 12(b)(6)..................................................................................................... 5

Fed. R. Civ. P. 12(c) ...................................................................................................... 1, 5

WAC 296-126-002(8) ........................................................................................................ 11

WAC 296-126-092(1), (3) .................................................................................................. 13

WAC 296-126-092(1), (4) .................................................................................................. 15

WAC 296-128-550................................................................................................................ 15, 16

Wash. Dep't Lab. & Indus.,
    Admin. Policy ES.A.8.1 (last revised April 6, 2023), *available at*
    https://www.lni.wa.gov/workers-rights/_docs/ESA81.pdf .................................................. 15

Wash. Dep't Lab. & Indus.,
    Admin. Policy ES.C.2 (last revised July 19, 2021), *available at*
    https://lni.wa.gov/workers-rights/_docs/esc2.pdf .......................................................... 11

Wash. Dep't Lab. & Indus.,
    Admin. Policy ES.C.6.1 (last revised Dec. 1, 2017), *available at*
    https://lni.wa.gov/workers-rights/_docs/esc6.1.pdf ........................................................ 13

JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 489-3939

Defendant Alaska Airlines, Inc. ("Alaska") hereby moves to dismiss Plaintiff Crystal Krueger's First Amended Complaint ("FAC") (ECF No. 40) pursuant to Federal Rule of Civil Procedure 12(b)(1), or in the alternative Rule 12(c), because her claims are preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*

## INTRODUCTION

Plaintiff alleges that the policies and practices applicable to Alaska's Flight Attendants— which are established by the nationwide collective bargaining agreement ("CBA") between Alaska and the Association of Flight Attendants ("AFA")—fail to pay minimum and overtime wages, and deprive putative class members of the opportunity to take meal and rest periods required by Washington law. *E.g.*, FAC ¶¶ 6.6–6.12. Alaska disagrees. It maintains that the uniform, complex compensation system that AFA negotiated for all of its members, whether located in Washington or not, fully compensates Flight Attendants who are based at Seattle-Tacoma International Airport ("SEA") and reside in Washington for the time that they work throughout the United States and internationally. Those rules likewise permit those employees to take meal and rest periods while they are working—including when they are onboard Alaska's flights.

These disagreements implicate disputes over the meaning of the CBA that can only be resolved through interpretation of the CBA's provisions, and thus, Plaintiff's claims are preempted by the RLA and must be pursued in arbitration. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252–53 (1994). As the Ninth Circuit has held, "state law causes of action that depend upon the interpretation of CBAs are preempted because the interpretation or application of existing labor agreements are the exclusive jurisdiction of the arbitrational bodies created by the RLA." *Air Transp. Ass'n of Am. v. San Francisco*, 266 F.3d 1064, 1076 (9th Cir. 2001). Accordingly, even where a claim is predicated entirely on state law, it is preempted if the factfinder would be required to resolve any question of contract interpretation. *E.g.*, *Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000).

DEFENDANT'S MOTION TO DISMISS
[No. 2:22-CV-01777-JCC] – Page 1

JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 489-3939

1        That is exactly the situation here.  Plaintiff's claims would require a factfinder to interpret
2  the CBA's provisions—which control the terms and conditions of employment for Plaintiff and
3  the putative class members.  For example, to determine whether Alaska's pay structure constitutes
4  a "piece rate"—an issue that must be resolved and that the FAC admits is an open dispute (*see,*
5  *e.g.*, FAC ¶¶ 6.5–6.12)—a factfinder would have to interpret the CBA's complex scheme of
6  compensation provisions that dictate how Flight Attendants are paid.  Each of Plaintiff's claims
7  also depend on determining when and/or how long each employee was required to work—which
8  cannot be accomplished without interpreting the CBA's complex duty, scheduling, and reporting
9  provisions.  *See, e.g.*, *Wisc. Cent. Ltd. v. Shannon*, 516 F. Supp. 2d 917, 922 (N.D. Ill. 2007), *aff'd*,
10  539 F.3d 751, 758 n.3 (7th Cir. 2008) (state-law claims were preempted because determining when
11  employees are required to be "on duty" depends on interpretation of the CBA).

12        Likewise, Plaintiff's overtime, meal-, and rest-period claims require determining each
13  employee's "regular rate" of pay, which would require interpreting the CBA's pay provisions to
14  assess the nature of the compensation, the context in which it was paid, and ultimately whether it
15  must be included as part of that "regular rate."  *See, e.g.*, *McKinley v. Southwest Airlines Co.*, 680
16  F. App'x 522, 524 (9th Cir. 2017) (unpublished) (state-law claim preempted because calculating
17  airline employee's regular rate of pay required CBA interpretation).

18        Finally, it would be impossible to determine whether Flight Attendants are afforded
19  adequate meal- and rest-break opportunities without interpreting the express and implied terms on
20  that topic—which incorporate the unique demands of airline operations, industry safety practices,
21  and federal aviation safety requirements.  *See Blackwell v. SkyWest Airlines, Inc.*, No. 06-cv-0307,
22  2008 WL 5103195, at *11–12 (S.D. Cal. Dec. 3, 2008) (state-law meal and rest period claims
23  necessarily require interpretation of CBA, including airline safety practices and customs, and were
24  therefore preempted).

25        For each of these reasons, and as discussed in detail below, Plaintiff's claims are preempted
26  by the RLA and should be dismissed.

**PROCEDURAL BACKGROUND**

Plaintiff filed a putative class action on behalf of all Flight Attendants based at SEA who are residents of Washington. (ECF No. 1-2). Alaska removed that action to this Court, (ECF No. 1), this Court denied Plaintiff's Motion to Remand, (ECF No. 21), and the Ninth Circuit rejected Plaintiff's request to challenge that ruling, (ECF No. 37). On October 4, 2023, Plaintiff filed her FAC. (ECF No. 40).

**FACTUAL BACKGROUND**

Alaska is an international airline. Declaration of Carmen Williams ("Williams Decl.") ¶ 3. Alaska's Flight Attendants are represented by AFA, which has negotiated a nationwide CBA that covers all Alaska Flight Attendants. Williams Decl. ¶ 2 & Ex. 1. While Alaska has six Flight Attendant bases, including in Alaska, California, Oregon, and Washington, they are permitted to reside anywhere in the world. Williams Decl. ¶ 3. Further, due to the interrelated structure of Alaska's network, each of Alaska's Flight Attendants must be available to work in hundreds of domestic (state, county, and local) and international (country, provincial, and local) jurisdictions under the same scheduling and corresponding pay rules. Williams Decl. ¶ 4 & Ex. 1. For these reasons (among others), the CBA sets forth the terms and conditions of employment for Alaska's Flight Attendants no matter where they are based, reside, or work. *See* Williams Decl. ¶ 4.

The CBA's scheduling and reserve provisions, for example, explain that Flight Attendants may be awarded either a "bid line" (sometimes also referred to as a regular, fly, or flying line) that consists only of scheduled flights, or a reserve line that consists of reserve availability periods during which a Flight Attendant may be assigned to work a flight as needed. Williams Decl., Ex. 1 §§ 10, 11. They further address how schedules for Flight Attendants are created using Alaska's Preferential Bidding System, the Company's right to change schedules, and what happens when flights are delayed or cancelled. *E.g.*, *id.* §§ 10, 11, 21.

The CBA also addresses how Flight Attendants are paid. That includes Alaska's Trip(s) for Pay ("TFP") system, in which Flight Attendants receive a certain number of credits based on

DEFENDANT'S MOTION TO DISMISS
[No. 2:22-CV-01777-JCC] – Page 3

JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 489-3939

the non-stop mileage for a particular flight (1 TFP per 243 miles; 0.1 additional TFP for each 40-mile increment above 243 miles). *Id.* § 21.E.[1]  The TFP for each assignment, combined with "Step Rates" based on an employee's seniority and other premium pay multipliers results in the employee's "Trip Rate," *i.e.*, their compensation for a particular flight. *Id.* § 5-4.  Those Trip Rates, combined with contractual minimums and guarantees, additional compensation for performing certain types of work, and various bonuses, constitute their total monthly compensation.  Williams Decl. ¶ 20.  Reserve Flight Attendants, who are subject to additional compensation terms, receive the greater of a monthly minimum guarantee, a set TFP value per availability period, or the value of the flights they work when called from reserve—in addition to and/or in combination with various premiums and increases.  Williams Decl., Ex. 1 § 11.G.1.

In addition to the CBA's express terms, there are also so-called "implied" terms that have arisen pursuant to past practice.  Williams Decl. ¶ 7.  Moreover, the CBA's terms have also been interpreted and clarified through dozens of Letters of Agreement ("LOA"), Memoranda of Understanding, settlement agreements, and arbitration awards that have the same force as the CBA's text and are considered part of the overall agreement.  *Id.* ¶ 8.

One such LOA—the "Flight Attendant Onboard Breaks LOA"—concerns meal and rest breaks for Flight Attendants while onboard Alaska's aircraft.  *Id.* ¶ 24 & Ex. 4 at 1.  As that LOA explains, Alaska has maintained a longstanding practice of allowing Flight Attendants to take breaks while working onboard Alaska's flights.  *Id.*, Ex. 4 at 1.  It further codifies that past practice, providing that Flight Attendants may take a 10-minute break on any flight with a "block time" (an industry term referring to when "the aircraft leaves the blocks at the gate under its own power for purposes of flight until it blocks in at the gate at the completion of the flight" (*id.*, Ex. 1 § 5-1)), of 2.5 hours and a 30-minute break on any flight with a block time over 4 hours.  *Id.*, Ex. 4 §§ 6.d.–7.  It also describes how and when those breaks may be taken consistent with employee seniority

---

[1] The parties' TFP compensation system is nearly identical to the one negotiated by Southwest Airlines and its flight attendants and, based on this, is a commonly accepted practice in the aviation industry.  Williams Decl. ¶ 22.

DEFENDANT'S MOTION TO DISMISS
[No. 2:22-CV-01777-JCC] – Page 4

JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 489-3939

1    and, most importantly, the need to maintain the safety of Alaska's passengers, employees, and

2    operations through compliance with the standards set forth in Alaska's manuals and the federal

3    aviation safety regulations. *Id.* §§ 1–6.c.  In addition, Alaska's Flight Attendants can also take

4    breaks during which they can eat, rest, and relax while they are at an airport prior to boarding

5    flights and in between assignments, as well as when they are deadheading—*i.e.*, traveling between

6    assignments.  Williams Decl. ¶ 29 & Ex. 1 § 10.X.9.

7                                                    **LEGAL STANDARD**

8         Alaska moves to dismiss Plaintiff's FAC pursuant to Rule 12(b)(1) or, in the alternative,

9    under Rule 12(c).[2]  A court should dismiss a claim under Rule 12(b)(1) if the party asserting

10   jurisdiction fails to meet its burden of establishing subject-matter jurisdiction.  *Kokkonen v.*

11   *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  When considering a motion under Rule

12   12(b)(1), the Court is not restricted to the face of the pleadings, but may review any evidence, such

13   as affidavits and testimony, to resolve factual disputes concerning its jurisdiction.  *Safe Air for*

14   *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

15        Courts evaluate Rule 12(c) and 12(b)(6) motions under the same standard.  *Dworkin v.*

16   *Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  Accordingly, "a court must assess whether

17   the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is

18   plausible on its face.'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting

19   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In doing so, "[c]ourts routinely take judicial notice

20   of the governing collective bargaining agreement where necessary to resolve issues of

21   preemption." *Johnson v. Sky Chefs, Inc.*, No. 11-CV-05619-LHK, 2012 WL 4483225, at *1 n.1

22   (N.D. Cal. Sept. 27, 2012); *see also, e.g.*, *Rorebeck v. Franciscan Health*, No. 3:18-CV-05423,

23   2019 WL 1436661, at *1 n.1 (W.D. Wash. Apr. 1, 2019) (same).

24        [2] This Court has held that RLA preemption is properly raised in a Rule 12(b)(1) motion to dismiss.  *E.g.*,
25   *Gallerson v. BNSF Ry. Co.*, No. C15-5821 BHS, 2016 WL 772926, at *2 n.1 (W.D. Wash. Feb. 29, 2016).  Other
     circuits, however, have treated this as a nonjurisdictional issue.  *See Beckington v. American Airlines, Inc.*, 926 F.3d
26   595, 607 n.7 (9th Cir. 2019) (collecting cases on each side of the circuit split, while not reaching the issue).  That
     distinction is immaterial here and thus Plaintiff's FAC may be dismissed under either Rule 12(b)(1) or 12(c).

DEFENDANT'S MOTION TO DISMISS
[No. 2:22-CV-01777-JCC] – Page 5

JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 489-3939

1    <u>**ARGUMENT**</u>

2    **I.    *H<span style="font-variant:small-caps">AWAIIAN</span> A<span style="font-variant:small-caps">IRLINES</span>* P<span style="font-variant:small-caps">REEMPTION</span>**

3    Congress's goal in passing the RLA was to avoid disruptions to interstate commerce caused

4    by labor disputes. 45 U.S.C. § 151a.  The RLA likewise protects the right of employees to form

5    and join unions, and for those employees to bargain collectively through their chosen

6    representative.   *Id.* § 152, Fourth.   To accomplish these goals, the RLA establishes "a

7    comprehensive framework for resolving labor disputes," *Hawaiian Airlines*, 512 U.S. at 252, by

8    requiring arbitration of all disputes "growing out of grievances or out of the interpretation or

9    application of agreements concerning rates of pay, rules, or working conditions," 45 U.S.C. § 153,

10   First(i).  Thus, the RLA requires that all "disputes concerned with 'duties and rights created or

11   defined by' the collective bargaining agreement" must be "resolved only through the RLA."

12   *Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904 (9th Cir. 2018) (en banc) (quoting *Hawaiian*

13   *Airlines*, 512 U.S. at 258).  In other words, federal courts lack jurisdiction over disputes concerned

14   with a CBA.  *Consol. Rail Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299, 303, 306–07 (1989);

15   *see also Hawaiian Airlines*, 512 U.S. at 253.

16   State-law claims are thus preempted if they "involv[e] the interpretation or application of

17   existing labor agreements" entered into pursuant to the RLA.  *Hawaiian Airlines*, 512 U.S. at 256.

18   Commonly known as *Hawaiian Airlines* preemption, claims are preempted where the right (1) was

19   "created by" the CBA, or (2) exists independently of the CBA but is nevertheless "substantially

20   dependent on analysis of" the CBA.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)

21   (citation omitted).

22   The state-law claims in this case are preempted under the second type of *Hawaiian Airlines*

23   preemption because they are "substantially dependent" on analyzing the Alaska-AFA CBA.  The

24   core question is whether "evaluation of the [state law] claim is inextricably intertwined with

25   consideration of the terms of the labor contract."  *Firestone*, 219 F.3d at 1065 (alteration in

26   original) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)).  Where determining

DEFENDANT'S MOTION TO DISMISS
[No. 2:22-CV-01777-JCC] – Page 6

JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 489-3939

either liability or remedy would require interpretation of the CBA's terms (including implied terms based on practice, usage and custom) the claim is preempted and must be dismissed so that they can proceed through the RLA's channels. *See, e.g.*, *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 862 (1987); *Allis-Chalmers*, 471 U.S. at 218 & n.12.

In *Schurke*, the Ninth Circuit reiterated that preemption applies where there is an "active" dispute over the meaning of the CBA's terms. 898 F.3d at 921. Thus, a claim is not preempted if the connection to the CBA is purely "hypothetical," or the contractual terms are so clear and unambiguous that the court would merely have to "'consider,' 'refer to,' or 'apply'" those provisions. *Id.* at 921–22 (quoting *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000); *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 690 (9th Cir. 2001)). Because the parties in *Schurke* agreed on the meaning of "every relevant provision in the CBA" and only disputed how to interpret Washington law, the court held there was no CBA term that would conceivably have to be interpreted to resolve the plaintiff's claim and thus *Hawaiian Airlines* preemption did not apply. *Id.* at 922, 926–27.

As other courts have observed, *Schurke* "did not purport to overrule any past preemption cases." *West v. Alaska Airlines, Inc.*, No. 3:18-CV-00102-SLG, 2018 WL 6424705, at *15 (D. Alaska Dec. 6, 2018). Rather, *Schurke* repeated the analytical framework articulated in *Hawaiian Airlines* and other preemption cases that formed the basis for *Wisconsin Central*, *McKinley*, *Blackwell,* and other cases cited by Alaska in this motion. *See Schurke*, 898 F.3d at 922.[3]

Moreover, since *Schurke* was decided, the Ninth Circuit and district courts in this circuit have continued to apply *Hawaiian Airlines* preemption consistent with historical precedents, finding state-law claims preempted where they are "inextricably intertwined" with a CBA's terms.

---

[3] *See, e.g.*, *Adames v. Executive Airlines, Inc.*, 258 F.3d 7, 12 (1st Cir. 2001) (citing *Livadas* to note that "[s]tate law claims requiring only consultation with the CBA, versus actual interpretation, should not be extinguished"); *Wisc. Cent.*, 539 F.3d at 758 (requiring more than a "mere 'glance'" to the CBA for RLA preemption (citation omitted)); *McKinley v. Southwest Airlines Co.*, No. CV 15-02939-AB (JPRx), 2015 WL 2431644, at *8 (C.D. Cal. May 19, 2015) ("[W]hen the terms of the CBA are so clear that there is absolutely no danger of inconsistent interpretations, RLA preemption is unnecessary."), *aff'd*, 680 F. App'x 522 (9th Cir. 2017).

1    For example, in *Columbia Export Terminal, LLC v. International Longshore & Warehouse Union*,

2    23 F.4th 836 (9th Cir. 2022), *cert. dismissed*, 142 S. Ct. 2094 (2022),[4] the Ninth Circuit held that

3    a claim alleging that employees had furnished inaccurate timesheets was preempted because "a

4    host of CBA provisions" relating to employee work and compensation needed to be interpreted to

5    determine "whether employees can claim all of their compensable hours in their weekly

6    timesheets." *Id.* at 844–45.  The court explained that those issues were not "merely 'speculative'

7    or 'hypothetical,'" but rather were "intrinsic to [the] claims," thus triggering preemption.  *Id.* at

8    845; *see also, e.g.*, *Rorebeck v. Franciscan Health*, No. 3:18-CV-05423, 2019 WL 1436661, at *5

9    (W.D. Wash. Apr. 1, 2019) (finding, because the CBA contained several terms relevant to

10   evaluating one element of the plaintiff's claim, the claim "cannot be evaluated without considering

11   the CBA" and was thus preempted).

12          Further, applying *Schurke*, the Ninth Circuit has reaffirmed that preemption applies where

13   the defendant has pointed to specific terms in the CBA that the court would need to interpret to

14   resolve the plaintiff's claims—even if the plaintiff disclaims any reliance on or dispute over those

15   terms.  *See Marquez v. Toll Global Forwarding*, 804 F. App'x 679, 681 (9th Cir. 2020)

16   (unpublished) (holding that plaintiff's meal- and rest-period claims were preempted under *Schurke*

17   because the court would necessarily have to interpret the CBA's terms governing when employees

18   could take breaks, despite the fact that the plaintiff argued he was not relying on the CBA and no

19   interpretation would be required).

20          As discussed in detail below, Plaintiff's claims are preempted because they are both

21   "inextricably intertwined" with the CBA's provisions and the parties have an active dispute over

22   the meaning of the CBA's terms.  Plaintiff's claims thus should be dismissed.

23

24

25   ───────────────────
       [4] While *Columbia Export Terminal* arose under the Labor-Management Relations Act ("LMRA"), its holding
26   is instructive here since "the RLA and LMRA § 301 preemption standards are 'virtually identical' in purpose and
       function." *Schurke*, 898 F.3d at 913 n.1.

DEFENDANT'S MOTION TO DISMISS
[No. 2:22-CV-01777-JCC] – Page 8

JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 489-3939

## II.     PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE RLA.

Plaintiff's claims require interpretation of the CBA and are thus preempted by the RLA. First, the Court will need to determine whether Alaska's compensation scheme is a "piece rate" to evaluate her minimum wage, overtime, and rest-break claims.  Because this will require interpretation of the CBA's compensation provisions, those claims are preempted.  Second, each of Plaintiff's claims will require the Court to interpret the CBA's duty provisions.  Third, her claims cannot be resolved without interpreting the CBA to determine each employee's "regular rate" of pay.  Finally, her meal- and rest-period claims require interpretation of express CBA terms and implied terms arising through past practice—including the specific LOA that addresses onboard meal and rest breaks.

### A.     Plaintiff's minimum wage, overtime, and rest-period claims are preempted because determining whether Alaska's pay system is a "piece rate" requires interpretation of the CBA.

Plaintiff's rest-break, minimum wage, and overtime claims are inextricably intertwined with the CBA, because each claim is intertwined with the CBA's compensation formula.  Each of these claims turns on whether Flight Attendants' compensation is "on a piecework basis," *see, e.g.*, FAC ¶ 6.5, which is also known as pay by "piece rate."  But determining whether Alaska's compensation system is a piece rate cannot be done without interpreting the CBA; thus, the RLA requires Plaintiff's claims to proceed in arbitration. *Hawaiian Airlines*, 512 U.S. at 256.

Plaintiff herself clearly expects this Court to determine whether Alaska's compensation system in a piece rate.  *Compare, e.g.*, FAC ¶¶ 1.2, 4.11, *with id.* ¶¶ 4.18, 6.6.  That cannot be accomplished without interpreting the CBA's complex compensation provisions, some of which are based on the distance of a Flight Attendant's scheduled flight,[5] offer additional compensation based on how long an employee works,[6] combine TFP with other factors,[7] or contains minimums,

---

[5] Williams Decl., Ex. 1 § 21.E.

[6] *E.g.*, *id.* §§ 8.K., 8.F., 22.A., 30.C.

[7] *E.g.*, *id.* §§ 9.D., 9.E., 21.G., 21.H., 21.I., 21.J., 21.R., 21.T.

1  guarantees, and pay-protection terms that provide compensation regardless of whether and/or how

2  much an employee actually works.[8]  Because each of these provisions must be taken into account

3  to determine whether Alaska's system is a piece rate, Plaintiff's claims that depend on that

4  determination are preempted.

5     **B.    Plaintiff's minimum wage and overtime claims require interpretation of the
          CBA to determine how long Flight Attendants worked.**

6

7          Plaintiff claims that the TFP compensation system negotiated for by her union fails to pay

8  Flight Attendants for the full time that they work.  FAC ¶¶ 4.18, 6.8–6.12.  According to Plaintiff,

9  she and the putative class members are required to be on duty at Sea-Tac "between one and two

10  hours prior to the first flight of their shift."  *Id.* ¶ 4.5.  Plaintiff alleges that Flight Attendants,

11  "[a]fter checking in," are "on-duty" and "must be ready to board alternate flights within a matter

12  of minutes whenever they are at the airport if requested to do so."  *Id.* ¶ 4.7.  And this duty period

13  allegedly continues after the flight lands.  *Id.* ¶¶ 4.16–4.17.

14          Alaska disputes these contentions and believes that Flight Attendants are fully

15  compensated for the work they perform.  Resolving those issues, however, necessarily requires

16  determining how long Flight Attendants are required to work and what they are paid for that time.

17  That determination is deeply intertwined with the CBA.

18          Section 8.D. of the CBA provides:

19     An on-duty period will commence at the time a Flight Attendant is required to
       report for duty or the actual reporting time, whichever is later. ***Initial report time***

20     ***at the Sequence Home Domicile will be one (1) hour prior to scheduled departure***
       and at out-stations forty-five minutes (:45) prior to scheduled departures. A duty

21     period will ***terminate fifteen (:15) minutes after*** final block arrival at the Sequence
       Home Domicile and fifteen (:15) minutes after block arrival of a flight at an out-

22     station.

23  Williams Decl., Ex. 1 § 8.D. (emphases added); *see also id.*, Ex. 3 at 1.  Under Alaska's

24  interpretation, the earliest a Flight Attendant is required (and permitted) to be on duty prior to their

25  first flight is one hour before the scheduled departure time—not between one and two hours, as

26

---

[8] *E.g.*, *id.* §§ 21.D., 21.M.

Plaintiff claims.  Williams Decl. ¶ 14 & Ex. 2 at 2.  And it ends 15 minutes after their last flight at their home domicile or at an outstation airport (unless there are extenuating circumstances).

Only after determining whose interpretation is right (Alaska's or Plaintiff's), can the Court evaluate Plaintiff's minimum wage and overtime claims.  Under Washington law, employees are entitled to compensation for only the time they are "authorized or required by the employer to be on duty."  WAC 296-126-002(8).  As such, Plaintiff's allegations claim compensation for up to an hour of time that—according to Alaska's interpretation—Flight Attendants are not entitled to be paid.  The parties therefore have an active dispute over the meaning of this CBA term.  Because this is the case, those claims are preempted by the RLA under *Schurke*.  *See* 898 F.3d at 921; *see also Columbia Exp. Terminal, LLC v. ILWU-PMA Pension Fund,* No. 20-CV-08202-JSW, 2023 WL 3510377, at *4 (N.D. Cal. May 16, 2023) (claim preempted under *Schurke* because it required evaluation of when employees were authorized to work).

Alaska disagrees also with Plaintiff's other allegations concerning when employees must be paid.  Plaintiff seems to assume that Flight Attendants are always "on-duty" when subject to Alaska's rules, including when on reserve, and that the TFP system does not compensate them for all of that time.  *E.g.*, FAC ¶ 4.18.  But not all job-associated duties count toward an employee's work hours under Washington law.  For example, "on-call" time is not included in the "hours worked" calculation.  Wash. Dep't Lab. & Indus., Admin. Policy ES.C.2 § 9 (last revised July 19, 2021), *available at* https://lni.wa.gov/workers-rights/_docs/esc2.pdf.

It is impossible to resolve this dispute without interpreting the CBA.  Indeed, as the Washington Supreme Court has explained in articulating the multi-factor analysis to determine whether on-call time must be compensated, "whether waiting time constitutes compensable working time is a question of fact which involves consideration of the agreement between the particular parties."  *Chelan Cnty. Deputy Sheriffs' Ass'n v. Chelan Cnty.*, 109 Wash. 2d 282, 293 (1987).  That is especially so here.  The CBA's provisions regarding reserve assignments contain more than 12 pages of rules that govern everything from how long reserve Flight Attendants have

DEFENDANT'S MOTION TO DISMISS
[No. 2:22-CV-01777-JCC] – Page 11

JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 489-3939

to report to their assignment and when they may be given an assignment, among many others. Williams Decl., Ex. 1 § 11.  Under those rules and associated past practices, Flight Attendants may do as they please while on a general reserve assignment (so long as they do not violate federal safety regulations by, for instance, consuming alcohol within the 10-hour period prior to when they could be called to work a flight). Williams Decl. ¶ 18 & Ex. 1 § 11.D.1.  At other times, however, like when they are on Airport Standby, they are subject to considerably more restrictions. *Id.* & Ex. 1 § 11.F.  A factfinder would have to interpret those rules to determine whether each type of reserve period must be counted toward a Flight Attendant's work hours.

Analogous cases confirm that Plaintiff's claims are preempted.  In *Wisconsin Central*, the court rejected the contention that it would need to merely "consult[]" the CBA to determine how many hours employees must be paid for.  516 F. Supp. 2d at 923.  Instead, it explained that the claims were preempted because "[d]etermining whether [the carrier's] employees worked a particular number of hours and what pay they received is not a matter of simply looking at their pay stubs, but instead requires interpretation and application of various provisions contained in the CBAs." *Id.* at 924.  Similarly, the Third Circuit held that it would be "impossible" to evaluate claims "without interpreting" the CBA to determine "whether the workers are 'required by the employer to be on the premises of the employer, to be on duty, or to be at the prescribed work place'" at times the plaintiff alleged they should have been paid.  *Penn. Fed'n of Bhd. of Maint. of Way Emps. v. Nat'l R.R. Passenger Corp. (Amtrak),* 989 F.2d 112, 115 (3d Cir. 1993) (citation omitted); *see also, e.g., Adames*, 258 F.3d at 13–15 (overtime claim and claim for uncompensated work time preempted); *Burgos v. Executive Air, Inc.*, 914 F. Supp. 792, 796–97 (D.P.R. 1996) (same).  As those cases show, where—as here—the claims require determining how long employees were required to work and how much they were paid for that time, that analysis would be "impossible" without interpreting the CBA's duty provisions.

For each of these reasons, the RLA preempts Plaintiff's minimum wage and overtime claims, and they should be dismissed.

DEFENDANT'S MOTION TO DISMISS
[No. 2:22-CV-01777-JCC] – Page 12

JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 489-3939

**C.    Plaintiff's meal- and rest-period claims require interpretation of the CBA to determine whether and when breaks are required.**

Plaintiff alleges that Alaska does not provide its Flight Attendants with meal and rest periods as required by Washington law.    FAC ¶¶ 4.13, 4.15, 4.20–4.21, 6.2–6.7.    Those requirements provide that employees must be allowed to take a 30-minute meal period that begins "no less than two hours nor more than five hours from the beginning of the shift" and a second meal period when they work "three or more hours longer than a normal work day."    WAC 296-126-092(1), (3).    Employees must also be allowed to take a 10-minute rest period, or its equivalent in "intermittent rest periods," for each 4 hours of work time, which "shall be scheduled as near as possible to the midpoint of the work period."    *Id.* §§ (4), (5).

The timing aspects of these requirements make them impossible to apply without interpreting the CBA's terms.    As noted above, the CBA contains detailed provisions regarding when Flight Attendants are on duty.    Interpreting those provisions is necessary to determine "the beginning of the shift" and ascertain when meal and rest periods must be scheduled and permitted. Faced with similar issues, courts have routinely found meal- and rest-period claims preempted.    In *Adames*, the court held that because the state law specified *when* a meal period was to be taken, applying that law would require interpretation of the CBA's duty provisions and the carrier's industry-specific practices to determine whether a meal period was required.    258 F.3d at 14–15. So too here.    Plaintiff's meal- and rest-period claims should thus be dismissed.

In addition, Plaintiff's meal-period claim is preempted because determining whether and when Flight Attendants must be afforded a second meal break would require a separate interpretive analysis.    An employee must be afforded a second meal period when they have worked "three or more hours longer than a normal work day."    WAC 296-126-092(1), (3).    The Department of Labor & Industries has advised that "[a] 'normal work day' is the shift the employee is regularly scheduled to work."    Wash. Dep't Lab. & Indus., Admin. Policy ES.C.6.1 § 5 (last revised Dec. 1, 2017), *available at* https://lni.wa.gov/workers-rights/_docs/esc6.1.pdf.

DEFENDANT'S MOTION TO DISMISS
[No. 2:22-CV-01777-JCC] – Page 13

JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 489-3939

The CBA, however, does not provide for "a normal work day."  Instead, it includes a web of scheduling, duty, and assignment provisions that dictate when Flight Attendants are required to work.  The scheduling terms, for example, allow Flight Attendants to express preferences, including the type of work they want to do, when they want to work, what days off they want, and how long they want their assignments to be.  Williams Decl., Ex. 1 § 10.M. (listing more than 40 individual preferences that Flight Attendants may express).  There are also specific provisions that permit Flight Attendants to ask to work reduced duty periods through the "Low-Bid Option," *id.* § 10.Q., or work significantly more through a "Long Stage Length Duty Period," *id.* § 10.DD. Those preferences are then taken into consideration by Alaska's Preferential Bidding System—a complex software system that creates monthly schedules—and work is assigned based on seniority, preferences, and availability.  Williams Decl. ¶¶ 10–11.  Each of those preferences, and how a Flight Attendant chooses to rank or combine them, directly affects Flight Attendants' schedules and total duty time on any given day.  As a result, Flight Attendant schedules can—and often do—vary greatly from day-to-day, week-to-week, and month-to-month. *Id.* ¶ 12.  Moreover, the CBA's duty provisions set a 10.5-hour maximum limit on the duty time a Flight Attendant is scheduled to work.  *Id.*, Ex. 1 § 8.E.  But even that limit is not absolute.  Alaska can, for instance, exceed that limit if it reassigns a Flight Attendant pursuant to the CBA's reassignment provisions. *Id.*  Likewise, Flight Attendants may waive that limit if they bid on certain assignments like the Long Stage Length Duty Period.  *Id.*; *see also id.* § 10.DD.2.d.; 14 C.F.R. § 121.467.

As such, determining a "normal work day" would require interpreting those aspects of the CBA to divine what Alaska and the AFA intended the normal work day to be—to the extent that even exists for these employees.  These claims, which are bound up in a complex and negotiated CBA, are just the type that Congress intended to be left to the RLA's resolution scheme. *Hawaiian Airlines*, 512 U.S. at 252.

DEFENDANT'S MOTION TO DISMISS
[No. 2:22-CV-01777-JCC] – Page 14

JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 489-3939

**D.**     **Plaintiff's overtime, meal-period, and rest-period claims require interpretation of the CBA to determine the "regular rate" of pay.**

Plaintiff's overtime, meal, and rest break claims cannot be resolved without determining each employee's "regular rate" of pay.  Determining the "regular rate" for Plaintiff and each of the putative class members would require interpretation of the compensation provisions contained in the Alaska-AFA CBA.  This case is thus identical to numerous others finding state-law claims preempted on this basis.  *E.g.*, *McKinley*, 680 F. App'x at 524 (state-law claim preempted where determining "regular rate" would require CBA interpretation); *Adames*, 258 F.3d at 15; *Blackwell*, 2008 WL 5103195, at *12; *Wisc. Cent.*, 516 F. Supp. 2d at 923; *Fitz-Gerald v. SkyWest Airlines, Inc.*, 155 Cal. App. 4th 411, 420–21 (2007).

Washington's overtime law requires employees be paid "at a rate not less than one and one-half times the *regular rate*" "for a workweek longer than forty hours."  RCW § 49.46.130(1) (emphasis added).  As such, "[p]rior to calculating overtime pay, it is necessary to determine the employee's regular rate of pay."  Wash. Dep't Lab. & Indus., Admin. Policy ES.A.8.1 § 3 (last revised Apr. 6, 2023), *available at* https://www.lni.wa.gov/workers-rights/_docs/ESA81.pdf. Likewise, where an employer fails to "allow[]" for the statutorily required meal and/or rest periods, *see* WAC 296-126-092(1), (4)—as Plaintiff alleges in this case, FAC ¶¶ 6.2–6.7—an employee may claim compensation for each missed break at his or her regular rate of pay.  *Wash. State Nurses Ass'n v. Sacred Heart Med. Ctr.*, 175 Wash. 2d 822, 831 (2012) (rest periods); *Pellino v. Brink's Inc.*, 164 Wash. App. 668, 690 (2011) (meal periods).

Where employees—such as Plaintiff—do not have a set hourly rate, "the regular rate of pay may be determined by dividing the amount of compensation received per week by the total number of hours worked during that week."  WAC 296-128-550.  Not all "compensation," however, counts for purposes of this calculation.  Rather, "[t]he regular rate includes total compensation earned in the pay period, *excluding certain payments*."  Admin. Policy ES.A.8.1 § 5 (emphasis added).  In particular, overtime payments, premium pay for working on the weekend or "other special days," certain bonuses, "Payment for Non-working Hours," paid leave, and "Show-

up and Call-back Pay," are all forms of pay that "are not included when determining regular rate." *Id.* Consequently, determining each employee's "regular rate" requires a factfinder to examine: (1) the forms of compensation paid to that Flight Attendant; (2) the circumstances in which each payment was made; and (3) how the applicable rate was calculated.

This type of in-depth examination necessarily requires interpreting the Alaska-AFA CBA since it defines the forms of compensation paid to covered employees, including Plaintiff and the putative class. This includes dozens of terms regarding pay premiums, increases, multipliers, per diems, money for uniforms, and pay for weather delays, mechanical issues, and cancellations— just to name a few—on a flight-by-flight and Flight Attendant-by-Flight Attendant basis, as different terms apply depending on what happens during a specific flight or other assignment. Williams Decl. ¶¶ 20–21; *see also, e.g., id.* Ex. 1 §§ 8 (over-duty pay, additional pay for waived rest, pay for reduced overnight rest, pay for reduced rest between assignments), 9 ("Junior Assignment" pay, premium open time pay), 10.W. (pay for scheduling errors), 13.D. (money for uniforms, coats, and boots), 14.H. (vacation and PTO pay), 15.H. (bereavement pay), 16 (pay for sick leave and workers' compensation), 21 (step rates, minimum pay rules, standard and non-standard TFP calculations, holiday pay, position pay adjustments, pay for international flights, delay pay, pay protection due to mechanical, weather, or other operational issues, stranded pay, pay for flying greater than scheduled, over-duty pay, productivity payments, additional pay for payroll errors, sit pay, pre-boarding pay, deadhead pay), 22.A. (per diem pay), 24.A. (pay for jury duty), 30.C. (training pay), 33.C. (compensation when working on charter flights).

Take, for example, the pay increases provided to Flight Attendants who work on their scheduled days off. Flight Attendants are guaranteed a certain number of days off per month. Williams Decl., Ex. 1 § 10.E.1. However, because the CBA provides that Flight Attendants bid on their schedules through Alaska's Preferential Bidding System, their schedules—including what days they have off—vary on a daily, weekly, and monthly basis. When Alaska assigns Flight Attendants to work on a scheduled day off or they pick up certain assignments in "open time" on

DEFENDANT'S MOTION TO DISMISS
[No. 2:22-CV-01777-JCC] – Page 16

JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 489-3939

an off day, they may be entitled to extra pay.  Williams Decl., Ex. 1 §§ 9.D. (2.5-times pay where required by Company to work on a day off), 9.E. (1.5-times pay where Flight Attendant works "premium open time").  According to the Department of Labor & Industries, "extra compensation" that is at least 1.5 times is excluded from the "regular rate" calculation, if paid for work on "regular days of rest."  Admin. Policy ES.A.8.1 § 5.2.  Those CBA provisions certainly provide "extra compensation" of at least 1.5 times.  But because Flight Attendants' schedules—and days off— fluctuate, it is unclear whether this compensation is for work on a "regular day of rest."  Resolving that issue would thus require interpreting the CBA's various scheduling, minimum days off, and compensation provisions to determine whether and when Alaska and AFA intended these employees to have "regular" rest days.

The CBA's minimums, guarantees, and pay protection provisions present even thornier issues of interpretation.  Alaska's Flight Attendants receive several pay guarantees, including Duty Period Guarantee for each duty period in a given sequence; Average Duty Period Guarantee based on the number of duty periods in a sequence; Extended Overnight Rule, which provides additional minimum pay for each scheduled or actual period of time in which a Flight Attendant is "completely free of duty" from 1:00 AM to 11:00 PM during a sequence; and Multiday Sequence Minimum Pay, which provides additional pay when a Flight Attendant has fewer duty periods than calendar days in certain multiday flight sequences.  Williams Decl., Ex. 1 § 21.D.  In addition, reserve Flight Attendants receive a "monthly guarantee" based on the number of reserve availability periods they are assigned each month and are paid the "greater of" that guarantee or the TFP they actually fly or are credited.  *Id.* § 11.G.  Moreover, numerous other pay provisions throughout the CBA incorporate and rely on those guarantees.  For example, additional pay for Flight Attendants that voluntarily waive rest following the end of a sequence is paid "above guarantee"—meaning it is paid in addition to the Flight Attendant's guarantee.  *Id.* §§ 8.F., 8.K., 9.E.

DEFENDANT'S MOTION TO DISMISS
[No. 2:22-CV-01777-JCC] – Page 17

JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 489-3939

1    A factfinder would need to interpret each of these pay-protection terms to determine

2    whether related payments fall within the "Show-up and Call-back Pay" exception and should thus

3    be excluded when calculating regular pay.  Under that exception, compensation is not credited

4    toward overtime pay due and "may be excluded from the regular rate" if (1) an agreement provides

5    "for a stated number of hours pay," (2) "the employee is not provided with the expected amount

6    of work," and (3) "the employee works only part of the hours but is paid for the entire number of

7    hours in the agreement."  Admin. Policy ES.A.8.1 § 5.7.

8    Determining whether payments pursuant to these CBA provisions are excludable under

9    this exception would require extensive CBA interpretation.  A factfinder would, for instance, have

10   to interpret the minimum, guarantee, and pay-protection provisions—as well as the CBA's

11   scheduling, minimum days off, and duty provisions—to determine whether they provide for a

12   certain number of hours of pay.  It would then need to assess whether each of the minimum,

13   guarantee, and pay-protection provisions address situations in which a Flight Attendant is not

14   given the expected amount of work, look at each instance where they were paid to determine if the

15   employee worked some or none of the expected hours, and then figure out how to apportion those

16   payments between the hours that employee either worked or did not work on that occasion.

17   This is further complicated by the fact that several of the CBA's minimum pay provisions

18   have been subject to arbitration between Alaska and AFA, and resulted in awards that clarify the

19   rules regarding those terms and how the minimums must be applied.  *See* Williams Decl. ¶ 8 &

20   Ex. 1 § 10-2 ¶ 9 (Addendum) (referencing and incorporating arbitration awards).  In addition,

21   Flight Attendants receive the "greater of the 'scheduled or actual'" time—which themselves have

22   complicated meanings.  *Id.*, Ex. 1 § 21.V. (providing that "actual" time is based on the flight's

23   "block time").  A factfinder would thus have to interpret those arbitration awards and related

24   definitions to determine whether pay under those minimum provisions counts.  *See, e.g.*, *Marquez*,

25   804 F. App'x at 681 (affirming dismissal, on preemption grounds, of rest-period claim because

26   court would need to interpret industry terms); *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832

F.3d 1024, 1035–36 (9th Cir. 2015) (claims preempted where court would need to define terms in the CBA).  These are just a few examples of CBA interpretative issues that would be put upon the factfinder to resolve Plaintiff's overtime, meal-, and rest-period claims.

Faced with similar, albeit much less complex, compensation systems, courts have routinely found state-law claims preempted where they require a factfinder to determine an employee's regular rate of pay.  In *McKinley*, the Ninth Circuit held that the plaintiff's claim for overtime under California law was preempted because determining the employee's compensation and regular rate of pay necessarily implicated the CBA, including its shift-trade and premium provisions.  680 F. App'x at 524.  As the Court explained:

> The District Court therefore correctly determined that "[i]n order to assess Plaintiff's broadly-alleged claim, the Court would have to examine each form of pay provided by the CBA, determine when that pay was due, and then decide whether the pay should have been included in Plaintiff's regular rate."  Thus, the District Court also properly held that since the resolution of the claim requires interpretation of the CBA, the complaint is preempted.

*Id.* (citation omitted).  Put differently, the claim was preempted not merely because it asked whether the pay rate complied with state law, but rather because the claim required determining how that rate was *computed*—which depended on interpretation of the CBA.  *Id.*

The court reached a similar conclusion in *Blackwell*.  There, the plaintiff alleged that SkyWest failed to pay minimum wage and overtime, and to provide meal and rest periods.  2008 WL 5103195, at *2.  The court dismissed those claims as preempted, holding that:

> Given the many applicable pay rates, categories, and differentials, any attempt to determine whether, when, and how much compensation is owed to Blackwell necessarily requires an interpretation of the CBA's provisions.

*Id.* at *12.  Moreover, the court explained that state-law overtime claims in particular fall into the category of claims that are "inextricably intertwined" with the CBA, "at least where the CBA addresses 'those same subjects and the meaning of the statutory language as applied to the terms of the CBA is unclear.'"  *Id.* at *13 (quoting *Adames*, 258 F.3d at 12).

DEFENDANT'S MOTION TO DISMISS
[No. 2:22-CV-01777-JCC] – Page 19

JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 489-3939

And in *Adames*, the First Circuit dismissed similar claims brought by a group of flight attendants because "it would be impossible to assess the remedy, payment at twice the hourly rate, without 'interpreting the Agreement to establish what the applicable 'regular' rate would be.'" 258 F.3d at 15; *see also, e.g.*, *Burgos*, 914 F. Supp. at 797 (same); *Wisc. Cent.*, 516 F. Supp. 2d at 923 (overtime claim preempted because "the CBAs contain numerous provisions governing base pay, premium pay, vacation pay, sick leave, personal leave, meals, lodging, and other fringe benefits that would have to be interpreted to determine the 'regular rate'"); *Fitz-Gerald*, 155 Cal. App. 4th at 420–21.

The same is true here.  Plaintiff expressly alleges that under the TFP system, "Plaintiff and members of the putative class do not receive 1.5 times their regular rate of pay for each hour they are on duty beyond 40 hours per week." FAC ¶ 4.19; *see also id.* ¶¶ 4.18, 6.11–6.12.  Alaska once again disagrees.  But regardless who's right, resolving that dispute necessarily requires interpreting the CBA's terms which is at least as—and really much more—complex than those in the cases cited above.  Her claims are thus preempted.  *Schurke*, 898 F.3d at 921.

For these reasons, determining Flight Attendants' regular rate of pay, and resolving the parties' disputes about it, would require interpreting the CBA.  Plaintiffs' claims are thus preempted and should be dismissed.

### E.   Plaintiff's meal- and rest-period claims require interpretation of express terms and implied terms that have developed through past practice.

Plaintiff's meal- and rest-period claims are preempted for the additional reason that they would require a factfinder to interpret the express terms of the Flight Attendant Onboard Breaks LOA.  Those express terms aside, the factfinder also would need to evaluate implied terms that have arisen through the parties' past practice, a task the RLA gives exclusively to arbitrators.  *See, e.g.*, *Bhd. of Locomotive Engineers & Trainmen (Gen. Comm. of Adjustment, Cent. Region) v. Union Pac. R.R. Co.*, 879 F.3d 754, 759 (7th Cir. 2017) ("Wading through . . . past practices, is a job for the arbitrator."); *cf. Kane v. Matson Navigation Co., Inc.*, 645 F. Supp. 3d 942, 949 (N.D.

DEFENDANT'S MOTION TO DISMISS
[No. 2:22-CV-01777-JCC] – Page 20

JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 489-3939

Cal. 2022) (examining industry customs that define seaman's ordinary job duties would require CBA interpretation).

As discussed above, Alaska and AFA are parties to an LOA concerning onboard meal and rest breaks. This LOA has the same force as the parties' CBA and any need to interpret its provisions likewise results in preemption.[9]  As acknowledged in that LOA, Alaska has a "longstanding past and current practice" of providing Flight Attendants with opportunities to take meal and rest breaks while onboard flights, during which they may "consume food and/or beverages." Williams Decl., Ex. 4 at 1. This includes breaks of at least 10 minutes for each flight that has a block time of 2.5 hours or longer, and at least 30 minutes for every flight with a block time over 4 hours.  *Id.* § 6.d.

The LOA further specifies how and when those breaks may be taken consistent with employee seniority, airline safety, and the need to comply with federal aviation regulations.  For example, it provides that:

- "Flight Attendants may take breaks while onboard aircraft on all Company flights, provided that the breaks do not interfere with prescribed safety or service duties." *Id.* § 1.

- "Such breaks may not be taken during boarding, sterile Flight Deck, prescribed service, or deplaning." *Id.* § 2.

- "If an emergency exists or as safety-related duties and Federal regulations require, a Flight Attendant on break must resume the responsibilities associated with their assigned position." *Id.* § 4.

- "The breaks taken by different Flight Attendants during a flight must be equal in duration, coordinated among the Flight Attendant crew, and offered in seniority order." *Id.* § 6.a.

Plaintiff's meal- and rest-period claims are inextricably intertwined with, and require interpretation of, these LOA provisions.  For example, a factfinder would need to interpret whether

---

[9] *See, e.g., Bowcock v. Cont'l Airlines, Inc.*, No. CIV.A. H-10-02372, 2010 WL 4812969, at *3 (S.D. Tex. Nov. 19, 2010) (claim preempted where "the court would have to examine and interpret the LOA"), *aff'd*, 432 F. App'x 343 (5th Cir. 2011).

DEFENDANT'S MOTION TO DISMISS
[No. 2:22-CV-01777-JCC] – Page 21

JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 489-3939

and how the LOA's usage of "block times"—the way flights' durations are counted in the CBA—equates to hours worked as used in the Washington statute. *Id.* § 6.d.

Moreover, Alaska actively disputes Plaintiff's claim that that "Flight Attendants must remain … ***available at all times*** to respond to any passenger needs . . . ." FAC ¶ 4.14 (emphasis added). This allegation is at odds with Alaska's understanding of the LOA, which specifies that when taking breaks, Flight Attendants may display Alaska-provided "laminated cards" "to indicate that the Flight Attendant is on an onboard break" and thus not available to assist routine passenger needs. Williams Decl., Ex. 4 § 7.c. This active dispute over the meaning of that LOA renders Plaintiff's meal- and rest-period claims preempted. *See Schurke*, 898 F.3d at 921.

To the extent Plaintiff seeks to rely on the notion that Flight Attendants may be called on to assist in an aviation safety emergency, that too confirms that her claims are preempted. In particular, a factfinder would also need to interpret the LOA's terms limiting Flight Attendants' ability to take on-board meal and rest breaks where doing so "interfere[s] with [their] prescribed safety or service duties," and its requirement that Flight Attendants on breaks must "resume their responsibilities" "[i]f an emergency exists." Williams Decl., Ex. 4 §§ 1, 4.

In *Blackwell*, for example, the airline argued that the claims were preempted because determining whether employees received adequate rest opportunities would require interpreting implied terms, past practice, and industry safety practices. *Id.* at *11. The court agreed:

> To resolve Blackwell's meal and rest period claims, this Court would be required to interpret the implied terms in the CBA, namely, pertinent federal aviation safety and security mandates.

*Id.* at *14. That holding applies with equal—if not greater—force here: Alaska's meal- and rest-break practices for Flight Attendants flying throughout the United States and internationally have not only been informed by those same industry norms and safety standards, but Alaska and AFA have entered into an LOA that expressly incorporates those customs and rules.

In *Marquez*, the plaintiff alleged that the employer had failed to ensure that plaintiffs had adequate opportunities to take meal and rest breaks. 804 F. App'x at 681. Similar to the LOA

here, the CBA in *Marquez* contained several terms that limited when employees could take meal and rest periods. *Id.*; *see also Marquez v. Toll Glob. Forwarding (USA) Inc.*, No. 18-cv-03054-ODW (ASx), 2018 WL 3218102, at *3 (C.D. Cal. June 28, 2018). As the Ninth Circuit explained in affirming dismissal, because evaluating the "claims will require interpretation of several [industry] terms of the CBAs" concerning when and under what circumstances employees could take breaks, which the employer "actively dispute[d] the meaning of" in the context of the plaintiff's claims, those claims were preempted under *Schurke*. *Marquez*, 804 F. App'x at 681 (citing *Schurke*, 898 F.3d at 921). The court also rejected the plaintiff's claim that no interpretation would be required—finding that "resolution of [the] claims will necessar[ily] require interpretation of terms of the CBAs that restrict [plaintiff's] and the other drivers' ability to take rest breaks." *Id.*

Precisely the same is true here. The parties disagree whether Flight Attendants are permitted to take adequate breaks under the terms of the LOA. Resolving that dispute "will necessar[ily] require interpretation" of those provisions. *Id.*; *cf. also Camarena-Regalado v. S. Cal. Permanente Med. Grp.*, No. LACV22206010JAKJPRX, 2023 WL 6216708, at *8 (C.D. Cal. Sept. 25, 2023) (claim that required "apply[ing] 'the industrial common law'" preempted (quoting *Kobold*, 832 F.3d at 1046)). As such, Plaintiff's claims are preempted.

Flight Attendants may also take meal and rest breaks before boarding Alaska's aircraft, at airports between flights, and while deadheading between assignments—whether those aircraft, airports, or flights are within Washington or not. Williams Decl. ¶ 29; *see also id.*, Ex. 1 § 10.X.9 (when deadheading, Flight Attendants will be provided a "complimentary meal on board any flight operating when there is a food option available for purchase"); *id.*, Ex. 5 at 1 (same). Determining whether those opportunities comply with Washington's meal- and rest-period requirements likewise requires analysis of Alaska's past practice and rules. This too confirms that Plaintiff's meal- and rest period claims are preempted.

JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 489-3939

1

## **CONCLUSION**

2      For the foregoing reasons, Plaintiff's claims are preempted and should therefore be

3 dismissed pursuant to Rule 12(b)(1) or, in the alternative, under Rule 12(c).

4

5

6 Respectfully submitted this 28th day of December, 2023.

7                                        By: *s/ Amanda C. Sommerfeld*

8                                        Amanda C. Sommerfeld (admitted *pro hac vice*)
                                        JONES DAY
9                                        555 South Flower Street, Fiftieth Floor
                                        Los Angeles, CA 90071.2452
10                                       Telephone: (213) 489-3939
                                        Email: asommerfeld@jonesday.com
11
                                        Molly Gabel, WSBA No. 47023
12                                       N. Joe Wonderly, WSBA No. 51925
                                        999 Third Avenue, Suite 4700
13                                       Seattle, WA 98104
                                        Phone: (206) 946-4910
14                                       Email: aescobar@seyfarth.com
15                                            mgabel@seyfarth.com
                                            jwonderly@seyfarth.com
16
                                        Aaron S. Markel (admitted *pro hac vice*)
17                                       JONES DAY
18                                       150 West Jefferson Avenue, Suite 2100
                                        Detroit, MI 48226
19                                       Telephone: (313) 230-7929
                                        Email: amarkel@jonesday.com
20
                                        *Attorneys for Defendant Alaska Airlines, Inc.*
21

22

23

24

25

26

1

## <u>CERTIFICATE OF SERVICE</u>

2

3

I certify that on the date noted below I served ***Alaska Airlines, Inc.'s Motion to Dismiss Or, In The Alternative, Motion for Judgment On the Pleadings*** via the Court's ECF which will send notice to the following:

4

5

6
Donald W. Heyrich, WSBA #23091
Jason A. Rittereiser, WSBA #43628

7
Rachel M. Emens, WSBA #49047
Henry Brudney, WSBA #52602

8
Joseph Wright, WSBA #55956
HKM Employment Attorneys LLP

9
600 Stewart Steet, Suite 901
Seattle, WA 98101

10
Ph: (206) 838-2504

11
Email: dheyrich@hkm.com
        jrittereiser@hkm.com

12
        remens@hkm.com
        hbrudney@hkm.com

13
        jwright@hkm.com

14

15
Peter D. Stutheit, WSBA #32090
Kyann C. Kalin

16
Stutheit Kalin LLC
208 SW First Ave., Suite 260

17
Portland, OR 97204
Ph: (503) 493-7488

18
Email: peter@stutheitkalin.com
        kyann@stutheitkalin.com

19

20
***Attorneys for Plaintiff***

21
DATED: December 28, 2023, at Los Angeles, California.

22

23
                                    s/ *Amanda C. Sommerfeld*
                                    Amanda C. Sommerfeld

24

25

26

DEFENDANT'S MOTION TO DISMISS
[No. 2:22-CV-01777-JCC] – Page 25