THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CRYSTAL KRUEGER, an individual on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALASKA AIRLINES, INC.,<br><br>Defendant. | CASE NO. C22-1777-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff's renewed motion to remand (Dkt. No. 53) and the parties' stipulated motions to seal (Dkt. Nos. 57, 67). Having thoroughly considered the parties' briefing and the relevant record, and finding oral argument unnecessary, the Court hereby GRANTS the motions for the reasons explained herein.

I.  **BACKGROUND**

Plaintiff Crystal Krueger filed a class action complaint in King County Superior Court against Defendant Alaska Airlines, Inc., alleging Defendant's "practices and policies" deny flight attendants statutorily required meal periods, rest breaks, minimum wage, and overtime wage pay. (Dkt. No. 1-2 at 10–11.) In December 2022, Defendant removed to federal court, citing the Class Action Fairness Act ("CAFA"). (Dkt. No. 1 at 3.) Plaintiff subsequently moved to remand, arguing, among other things, that the action falls within the "home state" exception to CAFA

jurisdiction. (*See* Dkt. No. 10 at 1–2.) The Court denied Plaintiff's motion in March 2023, finding she failed to show, "by a preponderance of the evidence, [that] at least . . . two-thirds of the flight attendants in her proposed class are Washington citizens"—as is required for application of the "home state" exception. (Dkt. No. 21 at 5.) Plaintiff renews the motion (Dkt. No. 53). But this time, supports her argument with an expert statistical report purporting to establish, by a preponderance of evidence, that at least two-thirds of class members are Washington citizens. (*See* Dkt. Nos. 53, 54.) Defendant renews its opposition to remand. (*See* Dkt. No. 59.)

## II. DISCUSSION

### A. Timeliness of Motion to Remand

As an initial matter, Defendant argues Plaintiff's renewed motion to remand is untimely under 28 U.S.C. § 1447(c). (*See* Dkt. No. 59 at 14–17.) The Court disagrees. "A motion to remand on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days" of removal. 28 U.S.C. § 1447(c). But because "exceptions to CAFA jurisdiction are 'akin to an abstention doctrine,' they are not viewed as a 'defect' under § 1447(c) which triggers the 30-day limitation." *Cox v. Holcomb Fam. Ltd. P'ship*, 2014 WL 5462022, slip op. at 5–6 (D. Or. 2014) (citing *Kamm v. ITEX Corp.*, 568 F3d 752, 755 (9th Cir. 2009) (the 30-day limit did not apply to a forum selection clause because it was not a "defect" within the meaning of the removal statute)).[1] Accordingly, Plaintiff's renewed motion to remand based on CAFA's "home state" exception is not precluded by the 30-day deadline in § 1447(c).

Because the 30-day deadline is inapplicable, the remaining question is whether Plaintiff waived her right to remand. Such a waiver occurs where a plaintiff (1) fails to file a motion

---

[1] Although the Ninth Circuit has not definitively ruled on this issue, "a clear majority of . . . federal appellate courts that have considered [it] have held that the thirty-day limitation of § 1447(c) does not apply to a motion to remand on the basis of abstention or other bases not encompassed in § 1447(c)." *Lippincott v. PNC Bank, NA*, 2012 WL 1894275, slip op. at 4 (D. Md. 2012) (citations omitted).

within a reasonable time or (2) engages in affirmative conduct or unequivocal assent of a sort which would render it offensive to fundamental principles of fairness to remand. *Angulo v. Providence Health & Servs. - Washington*, 2024 WL 1252412, slip op. at 3 (W.D. Wash. 2024). Based on the facts of this case, the Court cannot conclude that Plaintiff waived her right to remand.

After Defendant removed this case, (*see* Dkt. No. 1), Plaintiff moved to remand less than a month later, timely raising arguments based on CAFA's home state exception. (*See* Dkt. No. 10.) The Court denied that motion. (*See* Dkt. Nos. 19, 21.) Plaintiff then sought reconsideration, (*see* Dkt. No. 20), which the Court denied. (*See* Dkt. No. 29.) Plaintiff renewed her motion to remand (Dkt. No. 53) approximately 11 months after the Court's denial of reconsideration (Dkt. No. 29), eight months after the Ninth Circuit's denial of permission to appeal (Dkt. No. 37), and three months after Defendant moved to dismiss (Dkt. No. 42). Most importantly, though, Plaintiff's renewed motion comes only two and a half months after her receipt of the class list from Defendant. (Dkt. No. 62 at 1, 3–4.) And according to Plaintiff, it was through this list that she learned, for the first time, class members' names and addresses—information under Defendant's control and necessary for determining citizenship. (*Id.* at 3.) This course of conduct, in the Court's view, reflects neither an unreasonable delay in seeking remand nor affirmative conduct amounting to waiver. *See Angulo*, 2024 WL 1252412, slip op. at 3 (finding no waiver where plaintiff filed renewed remand motion within 10 months of initial remand motion and four months after jurisdictional discovery).

Accordingly, the Court finds Plaintiff's renewed motion (Dkt. No. 53) is timely.[2]

**B.     Applicability of CAFA's Home State Exception**

"CAFA significantly expanded federal jurisdiction in diversity class actions." *Jauregui v.*

---

[2] Alternatively, Defendant argues the Court should resolve their pending motion to dismiss before ruling on the motion to remand. (*Id.* at 18–19.) Again, the Court disagrees given the complexity of the issues presented in Defendant's motion to dismiss. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999).

*Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022). It provides federal district courts with original jurisdiction over class actions when there is minimal diversity, a proposed class of at least 100 members, and an amount in controversy exceeding $5 million. 28 U.S.C. § 1332(d)(2). But even if these requirements are met, district courts *must* decline jurisdiction when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." *Id.* § 1332(d)(4)(B). This is known as the "home state" exception. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022–23 (9th Cir. 2007).

To meet this burden, the moving party must provide "some facts in evidence from which the district court may make findings regarding class members' citizenship." *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013). While this "jurisdictional finding of fact should be based on more than guesswork," a court may "make reasonable inferences from facts in evidence." *Id.* at 886. These factual findings must be made under a preponderance of the evidence standard. *Id.* at 884. Plaintiff argues that newly obtained evidence reveals that CAFA's home state exception applies to this case. (Dkt. No. 53 at 1, 5.) For the reasons described below, the Court agrees.

Plaintiff submits an expert report examining a list of 2,894 class members and their addresses—information obtained from Defendant during the initial discovery exchange. (*See* Dkt. Nos. 54, 55.) And to evaluate their likelihood of Washington citizenship, Plaintiff identified seven factors ("citizenship factors"): residence, voter registration, property ownership, place of employment, driver's license, vehicle registration, and payment of taxes. (Dkt. No. 53 at 3.) Plaintiff then applied these factors using two different sets of criteria: the "residence-plus-three" test and the "five-or-more" test. (Dkt. No. 54 at 4.) A class member passed the "residence-plus-three" test if they were a Washington resident and met at least three additional Washington citizenship factors. (*Id.*) A class member passed the "five-or-more" test if they had evidence of at

least five Washington citizenship factors. (*Id.*)

Applying these tests, Plaintiff contends that (1) every class member has a Washington address, (2) 94% of a random sample of 100 class members meets the "residence-plus-three" test, and (3) 80% of a random sample of 100 class members meets the "five-or-more-factors" test. (*Id.* at 2.) These data points, according to Plaintiff and her expert, conclusively establish that at least two-thirds of the class are Washington citizens. (Dkt. No. 53 at 3.)

In response, Defendant mainly takes issue with Plaintiff's methodology. (*See generally* Dkt. No. 59.) Defendant argues Plaintiff's analysis is flawed because (1) it relies on facts that did not exist at the time of removal, (2) it assumes a class member's mailing address is a proxy for residence, (3) it fails to account for flight attendants' frequent use of "crash pads," along with those whose addresses were P.O. boxes, UPS stores, or shared with another flight attendant, (4) it relies on irrelevant factors such as employment status, and (5) it fails to account for intent to remain and/or non-forum citizenship. (*Id.* at 22–26.)[3] Although the Court agrees that Plaintiff's analysis contains imperfections, the Court nevertheless concludes that Plaintiff meets her burden of establishing that at least two-thirds of class members are Washington citizens for the following reasons:

First, to the extent Plaintiff's 100-person sample included flight attendants who were not class members at the time of removal, such inclusion is minimal and does not undermine Plaintiff's overall conclusion. Indeed, there are only six such individuals. (*See* Dkt. No. 62 at 8.) And even excluding these six individuals from the sample, which Plaintiff does in response to Defendant's objection, (*see* Dkt. Nos. 63 at 1–4, 65 at 5), Plaintiff can still demonstrate that at least two-thirds of class members are Washington citizens, given the significant cushion provided by her additional evidence and analysis. (*See* Dkt. No. 63 at 3) (expert's supplement

---

[3] Notably, Defendant does not oppose Plaintiff's use of randomized statistical sampling to evaluate citizenship. (*See generally id.*) Accordingly, the Court focuses its analysis on the sampled class members.

declaration indicating a 95% probability that 91.7–99.7% of class members in the 94-person sample meet the "residence-plus-three" test and that 73–88.6% meet the "five-or-more-factors" test).[4]

Second, Defendant's other arguments are similarly undermined by "the substantial cushion afforded by the percentage of class members with last known [Washington] addresses." *See Adams v. W. Marine Prod., Inc.*, 958 F.3d 1216, 1223 (9th Cir. 2020). It is undisputed that every single class member provided Defendant, their employer, with a Washington state address. (*See* Dkt. Nos. 59 at 23, 62 at 9.) And while "last known mailing addresses are not a direct proxy for residence," it can provide indirect evidence of residence, particularly where a significant portion of class members' last known addresses are in that state. *See Adams*, 958 F.3d at 1223 (plaintiff "readily met her burden" by offering evidence that over 90% of class members had last known mailing addresses in California).[5] Moreover, the Court is not persuaded that those who provided P.O. box or UPS store addresses do not, in fact, reside in Washington. And to the extent there remains any doubt, Plaintiff's skip-tracing returned residential street addresses in Washington for the four individuals who provided Defendant with a P.O. box or UPS store address. (*See* Dkt. Nos. 62 at 9–10) (citing Dkt. No. 63 at 6–7, 10).

Third, Plaintiff provides sufficient evidence of class members' intent to remain, through Plaintiff's application of the citizenship factors. Plaintiff has evaluated *each* of these seven factors with respect to the sampled class members. (*See* Dkt. No. 55.) And based on this evaluation, she asserts there is a 95% probability that 91.7–99.7% of class members in the 94-person sample meet the "residence-plus-three" test and that 73–88.6% meet the "five-or-more-

---

[4] The same logic applies to Defendant's argument that one flight attendant in the sample registered to vote in Washington *after* this case was filed. (*See* Dkt. No. 59 at 22.)

[5] Concededly, plaintiff in *Adams* was found to have met the lower burden for *discretionary* remand. *See id.* at 1222–23. This required a showing that more than one-third (rather than two-thirds) of class members were citizens of the state in which the action was originally filed. *See* 28 U.S.C. § 1332(d)(3). Nonetheless, because Plaintiff here has provided ample *additional* evidence of class members' Washington citizenship, *Adams*' logic remains applicable.

ORDER
C22-1777-JCC
PAGE - 6

factors" test. (Dkt. No. 63 at 3.) As the Ninth Circuit has explained, "intention to remain may be established by factors such as: current residence; voting registration and practices; location of personal and real property; . . . place of employment or business; driver's license and automobile registration; and payment of taxes." *Kyung Park v. Holder*, 572 F.3d 619, 624–25 (9th Cir. 2009). Drawing reasonable inferences from the facts in evidence, the Court concludes that a significant portion of class members—and at least two thirds—are Washington citizens who intend to remain in the state. *See Brinkley v. Monterey Fin. Servs., Inc.*, 873 F.3d 1118, 1121 (9th Cir. 2017).

Fourth, Defendant's remaining arguments are largely speculative and impose upon Plaintiff a higher burden than that required by law. For example, Defendant suggests that class members who share a Washington address are somehow less likely to be Washington residents. (*See* Dkt. No. 59 at 24.) But as Plaintiff correctly notes, the more probable explanation is that such class members are roommates or, in the case of those sharing a last name, are related. (*See* Dkt. No. 62 at 10.) And beyond pointing to a handful of class members whom Plaintiff erroneously counted as Washington citizens, Defendant has not cast doubt as to the overall veracity of Plaintiff's analysis.

Based upon its review of all the evidence put forth, including the significant cushion provided by class members' Washington mailing addresses, the Court is satisfied that Plaintiff has met her burden of showing that, more likely than not, at least two-thirds of putative class members are Washington citizens. This triggers application of CAFA's mandatory home state exception under 28 U.S.C. § 1332(d)(4)(B). Fundamentally, the Ninth Circuit has "caution[ed] that CAFA does not demand a plaintiff show the citizenship of each class member with certainty beyond a reasonable doubt." *Adams*, 958 F.3d at 1223. This is because "requiring a district court to 'examin[e] the domicile of every proposed class member before ruling on the citizenship requirement' would render class actions 'totally unworkable.'" *Id.* (citing *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 816 (5th Cir. 2007)).

### C. Motions to Seal

Separately, the parties move to seal exhibits containing personal identifiable information. (*See* Dkt. Nos. 57, 67.) While the public has a common law right to inspect and copy public records, including those from judicial proceedings, these rights are not absolute. They must yield when (1) sealing a document serves a compelling interest, (2) that is substantially likely to be harmed if the document is not sealed, and (3) there are no less restrictive alternatives for protecting the interest. *See United States v. Doe*, 870 F.3d 991, 998 (9th Cir. 2017). Given the nature of the information contained in the exhibits at issue, these criteria are met here.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's renewed motion to remand (Dkt. No. 53) is GRANTED. Defendant's motion to dismiss (Dkt. No. 42) is DENIED as moot. Finally, the parties' stipulated motions to seal (Dkt. Nos. 57, 67) are GRANTED. The Clerk is DIRECTED to remand this case to King County Superior Court and to maintain Docket Numbers 58, 68, 69, and 70 under seal.

DATED this 16th day of May 2024.

John C. Coughenour
UNITED STATES DISTRICT JUDGE